UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 9084 |
| | ) | |
| TRIPLE A SERVICES, INC., a corporation, | ) | |
| and THOMAS J. WHENNEN, SCOTT C. | ) | Judge Nordberg |
| WHENNEN, and DAVID A. FRISCO, | ) | |
| individuals, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE OF PERMANENT INJUNCTION

Plaintiff, the United States of America, by its attorney, Patrick J. Fitzgerald, United States

Attorney for the Northern District of Illinois, having filed a complaint for injunctive relief against

Triple A Services, Inc. ("Triple A"), a corporation, and Thomas J. Whennen, Scott C. Whennen, and

David A. Frisco, individuals (collectively "Defendants"), and Defendants having appeared and

having consented to entry of this Consent Decree of Permanent Injunction ("Decree") without

contest, without admitting or denying the allegations in the complaint, and before any testimony has

been taken, and the United States of America having consented to this Decree;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    This court has jurisdiction over the subject matter and over all parties to this action.

2.    The complaint for injunction states a cause of action against Defendants under the

Federal Food, Drug, and Cosmetic Act (the "Act"), 21 U.S.C. §§ 301-399d.

3.      The complaint alleges that Defendants violate the Act, 21 U.S.C. § 331(k), by causing articles of food within the meaning of 21 U.S.C. § 321(f), namely ready-to-eat sandwiches and ready-to-eat produce, to become adulterated within the meaning of 21 U.S.C.

§ 342(a)(4) while held for sale after shipment of one or more components in interstate commerce.

4.      Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, heirs, attorneys, and any entities or persons in active concert or participation with any of them are hereby permanently restrained and enjoined, under the provisions of 21 U.S.C. § 332(a) and the equitable authority of this court, from directly or indirectly manufacturing, receiving, preparing, processing, packing, holding, and distributing articles of food, at or from their facility located at 2637 South Throop Street Chicago, Illinois 60608-5715 ("Defendants' facility"), and/or any other location(s) at or from which Defendants, now or in the future, receive, process, prepare, pack, hold, or distribute articles of food, unless and until:

A.      Defendants retain, at their expense, an independent laboratory (the "laboratory") having no personal or financial ties (other than the retention agreement) to Defendants (and each and all of their directors, officers, and employees) or their families, which is qualified to collect product and environmental samples from within the Defendants' facility and analyze those samples for the presence of *Listeria monocytogenes* ("*L. mono*") using a method that is acceptable to the United States Food and Drug Administration ("FDA"). Defendants shall notify FDA in writing immediately upon retaining such laboratory and shall provide FDA a copy of the service contract. Such service contract shall contain provisions, acceptable to FDA, for regular environmental and finished product sample collection and analyses, including how and where to sample, the number and frequency of

samples to be collected, and the methods of analyses, in accordance with the Listeria Monitoring Program discussed in paragraph 4.C below;

B.     Defendants retain, at their expense, an independent expert(s) (the "Sanitation Expert") having no personal or financial ties (other than the retention agreement) to Defendants (and each and all of their directors, officers, and employees) or their families, and who, by reason of background, education, training, and experience, is qualified to develop a Listeria Monitoring Program and to inspect Defendants' facility and to determine whether the methods, facilities, and controls operated and administered are in conformity with the Act, its implementing regulations, and this Decree. Defendants shall notify FDA in writing of the name(s) and qualifications of the Sanitation Expert as soon as they retain such expert;

C.     Defendants' Sanitation Expert, in consultation with the laboratory, after review of all FDA observations from 2001 to present, develops a written Listeria Monitoring Program, which shall include, at a minimum, the following:

(1)     An effective written sanitation control program that establishes adequate methods, facilities, and controls for receiving, preparing, processing, packing, holding and distributing articles of food to minimize the risk of introducing *L. mono*, other pathogenic organisms, and filth into Defendants' food, and to ensure that foods are not adulterated within the meaning of 21 U.S.C. § 342(a). Such methods, facilities, and controls shall include, but shall not be limited to, thoroughly cleaning, sanitizing, renovating, and rendering Defendants' facility and all equipment therein suitable for use in receiving, preparing, processing, packing, holding, and distributing articles of food to prevent such articles from becoming adulterated, and instituting standard sanitation operating

3

procedures ("SSOPs") to ensure that Defendants' facility and equipment therein are continuously maintained in a sanitary condition;

(2)    A written employee training program (in English and Spanish) that includes, at a minimum, instruction on sanitary food handling techniques and documentation that each employee has received such training. Defendants' Sanitation Expert shall ensure that each employee fully understands the substance of the employee training program;

(3)    An effective program for environmental monitoring and testing of Defendants' facility to ensure that such pathogenic organisms as *Listeria species* (*L. spp.*) are controlled, and such substances, including *L. mono*, are not present within the facility. Environmental monitoring shall include, but not be limited to, collecting swab samples from food-contact surfaces, equipment, and other environmental sites throughout Defendants' facility (where the raw ingredients, in-process, and finished articles of foods are received, prepared, processed, packed, held, and/or distributed, and common areas that could be reservoirs for cross-contamination), and analysis of collected samples, in a manner acceptable to FDA. Defendants shall ensure that the results of all analyses conducted pursuant to this paragraph are sent to FDA within two (2) calendar days of receipt by Defendants; and

(4)    A written plan for remedial action should *L. spp.*, *L. mono*, or any other pathogenic organism be detected;

D.    Defendants assign continuing responsibility for the operation of the Listeria Monitoring Program to a person (or persons), who, by reason of background, experience, or education, is competent to maintain Defendants' facility in a sanitary condition, coordinate with the

4

laboratory, and implement any necessary remedial action(s), and provide such person(s) with the authority to achieve the necessary corrections;

E.  Defendants make English and Spanish versions of the Listeria Monitoring Program available and accessible to all their employees;

F.  FDA approves, in writing, the Listeria Monitoring Program discussed in paragraph 4.C above;

G.  The Sanitation Expert conducts a comprehensive inspection of Defendants' facility and the methods and controls used to receive, prepare, process, pack, hold, and distribute foods to determine whether the Defendants have effectively implemented all corrections and are operating in compliance with this Decree, the Act, and its implementing regulations. The Sanitation Expert shall submit all findings to Defendants and FDA concurrently, within ten (10) business days of completion of the inspection;

H.  Defendants report to FDA in writing the actions they have taken to bring their operations into compliance with the Act and all applicable regulations, including:

(1)  Documentation that Defendants have cleaned and sanitized Defendants' facility and equipment therein and made improvements, thereby rendering the facility and equipment suitable for receiving, processing, preparing, packing, holding, and distributing articles of food, and documentation that Defendants have conducted environmental testing in a manner acceptable to the FDA and received laboratory results showing that *L. mono* is no longer present in the facility;

(2)  Specific measures that they have taken to address each of the violations documented by FDA since April 2001; and

(3)  A copy of the Listeria Monitoring Program;

5

I.    FDA, as it deems necessary to evaluate Defendants' compliance with the terms of this Decree, the Act, and all applicable regulations, conducts inspections of Defendants' facility, including the buildings, sanitation-related systems, equipment, utensils, all articles of food, and relevant records contained therein;

J.    FDA notifies Defendants in writing that Defendants appear to be in compliance with the requirements set forth in paragraph 4.A through 4.I of this Decree, the Act, and its implementing regulations; and

K.    Defendants have paid all costs of inspection, analyses, review, investigations, examination, and supervision associated with FDA's oversight with respect to paragraph 4.A through 4.J of this Decree, at the rates set forth in paragraph 15 below.

5.    Within thirty (30) calendar days after entry of this Decree, Defendants shall destroy, under FDA's supervision, and according to a destruction plan submitted in writing by Defendants and approved in writing by FDA prior to implementation, all in-process and finished articles of food currently in their custody, control, or possession, except the pre-packaged canned or bottled soft drinks, pre-packaged snacks, candy, chips, and sealed coffee that were purchased in sealed containers from third parties and that have not been opened inside Defendants' facility or opened prior to entering the facility, which shall be listed and described in the destruction plan..

6.    Immediately upon resuming manufacturing, processing, and/or preparing food after completing the requirements of paragraph 4, Defendants shall, in consultation with the laboratory and the Sanitation Expert, continuously implement the following steps to prevent further contamination from *L. mono*, other pathogenic organisms, or filth in their food products and facility:

A.      Effectively implement on an ongoing basis, the Listeria Monitoring Program developed pursuant to paragraph 4.C of this Decree.

B.      Conduct environmental monitoring and testing to ensure that the SSOPs continue to eliminate the *L. mono* hazard and that the SSOPs are consistently being followed. Environmental monitoring shall include collecting swab samples from food-contact and non-food-contact surfaces, equipment, and other environmental sites throughout Defendants' facility (where articles of food are received, prepared, processed, packed, and held, up to and including final packaging, as well as common areas), and analyzing such samples for the presence of *L. spp.* Environmental testing for *L.spp.* shall be performed by the laboratory in accordance with timetables and methods that Defendants submit to FDA in writing for approval by FDA in writing before testing begins. Defendants shall ensure that the results of all testing conducted pursuant to this paragraph are forwarded to FDA within two (2) calendar days after receipt by Defendants. Defendants' environmental testing must include, at a minimum, all of the following:

(1)      If a food- or non-food-contact surface is found to be positive for *L. spp.* during routine testing, intensified sampling must be done as soon as possible, in conjunction with intensified sanitation measures. Intensified sampling requires that three (3) samples per day must be collected and analyzed until at least nine (9) consecutive samples (three (3) days of intensified sampling) have been taken and are negative for *L. spp.* from the site where the *L. spp.* was identified. After nine (9) consecutive samples are tested and found to be negative, that site may be subject to routine sampling; and

(2)      All food products that have come in contact with a site that tests positive for the general strain *L. spp.* must be placed on hold pending laboratory test results. The products can be

released only if laboratory test results are negative for *L. mono*; if the laboratory results are positive

for *L. mono*, all food products manufactured from the time the laboratory sample(s) testing positive

for *L. mono* were collected must be destroyed at Defendants' expense, under FDA's supervision, and

according to a written destruction plan submitted by Defendants and approved, in writing, by FDA

prior to implementation; and

      C.     Conduct finished product testing in the following manner:

      (1)     Defendants shall test for *L. mono* in all lots of each food product for at least five (5)

consecutive production days using a testing method approved in writing in advance by FDA;

      (2)     After the completion of testing under paragraph 6.C(1) above, Defendants shall test

at least one lot of each food product per day for the next twenty (20) production days;

      (3)     After the completion of testing under paragraph 6.C(2) above, Defendants shall test

at least one lot of each food product per every five (5) production days for the next three (3) months;

and

      (4)     After the completion of testing under paragraph 6.C(3) above, Defendants shall test

at least one lot of each food product per month thereafter.

      If any laboratory test completed pursuant to paragraphs 6.C(1)-(4) above shows the presence

of *L. mono* in any article of food, then Defendants must immediately cease production and notify

FDA that production has ceased. Defendants shall also destroy, at Defendants' expense, under

FDA's supervision, and according to a destruction plan submitted in writing by Defendants and

approved prior to implementation, in writing, by FDA, all food products manufactured from the time

the laboratory sample(s) testing positive for *L. mono* were collected. Defendants may resume

production only when they have determined and corrected the cause of the contamination and only

after FDA notifies Defendants in writing that Defendants appear to be in compliance with the requirements of this Decree, the Act, and its implementing regulations. After correcting the cause of the contamination, Defendants shall reinstate the complete sequence of testing under this paragraph anew. Defendants shall ensure that the results of all testing conducted under this paragraph are forwarded to FDA within two (2) calendar days after receipt by Defendants.

7.      If, after notifying FDA of the name of the laboratory retained to conduct sample collection and analyses pursuant to paragraph 4.A, Defendants terminate or in any way alter their service contract with the laboratory, Defendants shall notify FDA within five (5) business days. If Defendants terminate their service contract, Defendants shall provide a copy of their service contract with the new laboratory to FDA within five (5) business days of execution.

8.      Defendants represent to this court that they have ceased manufacturing, production, processing, and distribution of sandwiches, produce, and baked goods and do not intend to resume manufacturing, production, processing, and distribution of those food products. Nothing in paragraphs 4 or 6 of this Decree shall preclude the Defendants from:

A.      Receiving, holding, and distributing from a designated sanitarily maintained location pre-packaged canned or bottled soft drinks, and/or pre-packaged snacks, candy or chips, and/or sealed coffee pouches ("sealed food articles") that are in compliance with the Act and FDA regulations and that Defendants purchase from a third party or parties so long as:

(1)      Defendants do not manufacture, process, pack, re-pack, compromise the seal of the sealed food articles, and/or label such articles, and instead act only as a distributor of the sealed food articles;

9

(2)     Prior to the Defendants' receipt, holding, and distribution of any sealed food articles:

(a)     Defendants thoroughly clean, renovate, and render the location at and from which Defendants will receive, hold, and distribute sealed food articles and all equipment contained therein (the "Designated Location") suitable for use in receiving, packing, holding, and distributing articles of food to preclude the adulteration of food, and institute adequate procedures to ensure that the Designated Location and equipment therein are continuously maintained in such condition;

(b)     Defendants' Sanitation Expert (as defined in paragraph 4.B) conducts a comprehensive inspection of the Designated Location and all equipment contained therein, including but not limited to testing for *L. mono,* and certifies in writing that the Designated Location and equipment are suitable for use in receiving, packing, holding, and/or distributing articles of food to preclude the adulteration of food, and are in compliance with the Act and FDA regulations;

(c)     Defendants submit to FDA written notice of their request to receive, hold, and/or distribute sealed food articles pursuant to this paragraph.  Such notice shall: (i) precisely describe the sealed food articles that are the subject of the notice and the Designated Location; (ii) describe the steps Defendants have taken to prevent cross-contamination of the Designated Location from other parts of Defendants' facility; and (iii) include a copy of the Sanitation Expert's report and certification prepared pursuant to subparagraph 8.A(2)(b);

(d)     FDA, as and when it deems necessary, inspects the Designated Location and all equipment contained therein; and

10

(e)    Defendants receive written authorization from FDA to receive, hold, and distribute the pre-approved sealed food articles at and from the Designated Location.

(3)    FDA's authorization in paragraph 8.A(2)(e) shall apply only to the Designated Location and the sealed food articles described in the written notice submitted pursuant to subparagraph 8.A(2)(c). If Defendants wish to receive, hold, and/or distribute sealed food articles at or from any other location, Defendants shall first comply with the requirements of this paragraph for the new location.

B.    Manufacturing, holding, and/or distributing ice from a separate sanitarily maintained location ("the Ice Tower"), so long as:

(1)    Prior to the Defendants' manufacturing, holding or distributing ice:

(a)    Defendants thoroughly clean, renovate, and render the Ice Tower and all equipment contained therein suitable for use in manufacturing, holding, and distributing ice to preclude the adulteration of food, and institute adequate procedures to ensure that the Ice Tower and equipment therein are continuously maintained in such condition;

(b)    Defendants' Sanitation Expert (as defined in paragraph 4.B) conducts a comprehensive inspection of the Ice Tower and all equipment contained therein, including but not limited to testing for *L. mono,* and certifies in writing that the Ice Tower and equipment are suitable for use in manufacturing, holding, and/or distributing ice to preclude the adulteration of food, and are in compliance with the Act and FDA regulations;

(c)    Defendants submit to FDA written notice of their request to manufacture, hold, and/or distribute ice pursuant to this paragraph. Such notice shall: (i) describe the steps Defendants have taken to prevent cross-contamination of the Ice Tower from other parts

11

of Defendants' facility; and (ii) include a copy of the Sanitation Expert's report and certification prepared pursuant to subparagraph B(1)(b);

(d)     FDA, as and when it deems necessary, inspects the Ice Tower and all equipment contained therein; and

(e)     Defendants receive written authorization from FDA to manufacture, hold, and distribute ice at the Ice Tower.

C.     Receiving, holding, and distributing ice that Defendants receive pre-packaged from a third party, provided that (1) Defendants receive, hold, and distribute such ice solely in and from a free-standing trailer located on Defendants' property but outside Defendants' facility, and (2) Defendants do not process, unpack, or repack such ice, or in any way compromise the seal of the ice packaging.

D.     If FDA determines that Defendants have violated the Act and/or FDA regulations, FDA may, at its discretion, revoke the authorization to receive, hold, and/or distribute sealed food articles and the authorization to manufacture, hold, and/or distribute ice, and/or invoke any of the provisions of this Decree, including, but not limited to, paragraphs 16 and 19.

9.     Nothing in this Decree prevents Defendants from permitting Independent Mobile Catering Operator Vehicles ("food trucks") to enter Defendants' facility and park therein, regardless of whether the food trucks hold food upon entry, so long no food product is removed from the food trucks.

10.     Defendants and each and all of their directors, officers, agents, employees, representatives, successors, assigns, heirs, attorneys, and any entities or persons in active concert or participation with any of them are hereby permanently restrained and enjoined, under the provisions

12

of 21 U.S.C. § 332(a) and the equitable authority of this court, from directly or indirectly receiving, preparing, processing, packing, holding, and/or distributing fish or fishery products, as defined in 21 C.F.R. § 123.3(d)&(e), at or from Defendants' facility, and any other location(s) at or from which Defendants, now or in the future, receive, process, prepare, pack, hold, or distribute fish or fishery products, unless and until:

A.      Defendants retain a person or persons (the "HACCP Expert" or "HACCP Experts") who is without any personal or financial ties (other than the consulting agreement) to Defendants (and each and all of their directors, officers, and employees) or their families, and who by reason of background, experience, and education, is qualified to:

(1)      Conduct hazard analyses to develop adequate HACCP plans for the processing of each type of fish and fishery product Defendants intend to process, as required by 21 C.F.R. § 123.6(a)-(c);

(2)      Verify the adequacy of Defendants' HACCP plans, as required by 21 C.F.R. § 123.8;

(3)      Develop adequate SSOPs specific to Defendants, as required by 21 C.F.R. § 123.11;

(4)      Evaluate Defendants' monitoring of key sanitation conditions and practices, as set forth in 21 C.F.R. § 123.11(b);

(5)      Develop and conduct employee training programs (in English and Spanish) on the SSOPs and seafood HACCP regulations;

(6)      Inspect Defendants' facility and establish procedures to ensure that the methods, facilities, and controls for processing fish and fishery products are continuously operated and administered in conformity with the Act and all applicable regulations.

Defendants shall notify FDA in writing of the identity and qualifications of the HACCP

Expert and provide FDA with information in writing regarding the HACCP Expert's qualifications,

background, experience, and/or education under Paragraphs 10.A(1)-(6) above as soon as such

HACCP Expert is retained;

B. The HACCP Expert retained by Defendants develops and submits to FDA:

(1) Adequate written HACCP plans for each type of fish and fishery product, received,

prepared, processed, packed, held, and distributed by Defendants for which food safety hazards are

identified, including appropriate critical control points and critical limits, as required by 21 C.F.R.

§ 123.6;

(2) Adequate written SSOPs, as required by 21 C.F.R. § 123.11;

(3) Adequate written corrective action plans, as part of the seafood HACCP plans, to be

taken whenever there is a deviation from the critical limit, as described in 21 C.F.R. § 123.7(b);

(4) Employee training programs (in English and Spanish) on the seafood HACCP

regulations, SSOPs, and control strategies specific to Defendants' fish and fishery products;

C. FDA has approved, in writing, the seafood HACCP plan(s), SSOPs, and training

program developed by the HACCP Expert, as specified in paragraphs 10.B(1)-(4)above;

D. Defendants successfully complete the employee training program developed by the

HACCP Expert and approved by FDA according to paragraph 10.C above.

E. Defendants report to FDA, in writing, the actions they have taken to bring their

seafood operations into compliance with this Decree, the Act, and all applicable regulations,

including the specific measures Defendants have taken to address each of the seafood HACCP

deficiencies documented by FDA at Defendants' facility since 2001;

14

F.  The HACCP Expert conducts a comprehensive inspection of the facility and the methods and controls used to receive, prepare, process, pack, hold, and distribute fish and fishery products to determine whether Defendants' processing facility is sanitary and Defendants are fully prepared to operate in compliance with this Decree, the Act, and all applicable regulations. The HACCP Expert shall verify that Defendants have corrected all of the seafood HACCP deficiencies documented by FDA. The HACCP expert shall submit all findings, in writing, to Defendants and FDA concurrently, within ten (10) business days of completion of the inspection;

G.  FDA, as it deems necessary to evaluate Defendants' compliance with the terms of this Decree, the Act, and all applicable regulations, conducts inspections of Defendants' facility, including the building, sanitation-related systems, equipment, utensils, articles of food, and relevant records, contained therein;

H.  Defendants pay all costs of supervision, inspections, investigations, analyses, examinations, and reviews associated with FDA oversight with respect to paragraphs 10.A through 10.G above, at the rates set forth in paragraph 15 below;

I.  Following one or more inspections, FDA notifies Defendants in writing that Defendants appear to be in compliance with the requirements set forth in Paragraphs 10.A through 10.H of this Decree, the Act, and all applicable regulations.

11.  Immediately upon resuming operations after completing the requirements set forth in paragraphs 10.A through 10.I of this Decree, Defendants shall, in consultation with the HACCP Expert, continuously implement the SSOPs, and seafood HACCP and training programs developed by the HACCP Expert and approved by FDA according to paragraph 10 Within thirty (30) days of Defendants' resumption of their seafood operations, the HACCP expert shall conduct a

comprehensive inspection of the facility and the methods and controls used to receive, prepare, process, pack, hold, and distribute foods to determine whether the Defendants are operating in compliance with this Decree, the Act, and all applicable regulations. The HACCP Expert shall conduct one inspection after ninety (90) days, and then one inspection every one hundred and eighty days (180) for the next three (3) years, and then one inspection annually for an additional two (2) years.

12.     Defendants and each and all of their officers, agents, employees, representatives, successors, assigns, heirs, attorneys, and any and all entities or persons in active concert or participation with any of them who receive actual notice of this Decree, are permanently restrained and enjoined under the provisions of 21 U.S.C. § 332(a) from directly or indirectly doing or causing any act that:

A.     Violates 21 U.S.C. § 331(k), by causing articles of food within the meaning of 21 U.S.C. § 321(f) to become adulterated within the meaning of 21 U.S.C. § 342(a)(4) while such articles are held for sale after shipment of one or more of their components in interstate commerce; and/or

B.     Results in the failure to implement and continuously maintain the requirements of this Decree.

13.     FDA shall be permitted, without prior notice and as and when FDA deems necessary, to make inspections of Defendants' facility, and any other locations at which Defendants receive, prepare, process, pack, hold, or distribute articles of food and, without prior notice, to take any other measures necessary to monitor and ensure continuing compliance with the terms of this Decree, the Act, and its implementing regulations. During the inspections, FDA shall be permitted to have

16

immediate access to buildings, equipment, raw ingredients, in-process and finished articles of food, containers, and packaging material therein; to take photographs and make video recordings; to take samples of Defendants' raw ingredients, in-process, and finished articles of food, containers, and packaging material; and to examine and copy all records related to receiving, preparing, processing, packing, holding, and distributing any and all articles of food. The inspections shall be permitted upon presentation of a copy of this Decree and appropriate credentials. The inspection authority granted by this Decree is apart from, and in addition to, the authority to make inspections under the Act, 21 U.S.C. § 374.

14.     Defendants shall notify FDA in writing at least fifteen (15) calendar days before any change in ownership, name or character of their business, including reorganization, relocation, dissolution, assignment, or lease or sale of the business or any assets of the business, such as buildings, equipment, or inventory, that may affect compliance with the obligations arising from this Decree. Defendants shall provide any prospective successor or assign with a copy of this Decree at least ten (10) calendar days before the assignment or change in business, and shall provide FDA with an affidavit of compliance with this paragraph within ten (10) calendar days of providing a copy of this Decree to a prospective successor or assign.

15.     Defendants shall pay all costs of FDA's supervision, inspections, investigations, analyses, examinations, and reviews that FDA deems necessary to evaluate Defendants' compliance with this Decree, at the standard rates prevailing at the time costs are incurred, and Defendants shall make payment in full to FDA within (30) calendar days of receiving written notification from FDA of the costs. As of the date that this Decree is signed by the parties, these rates are: $87.57 per hour and fraction thereof per representative inspection work; $104.96 per hour or fraction thereof per

representative analytical or review work; $0.51 per mile for travel by automobile; government rate

or the equivalent for travel by air or other means; and the published government per diem rate or the

equivalent for the areas in which the inspections are performed per representative and per day for

subsistence expenses, where necessary. In the event that the standard rates applicable to FDA

supervision of court-ordered compliance are modified, these rates shall be increased or decreased

without further order of the court.

16.     If, at any time after entry of this Decree, FDA determines, based on the results of an

inspection, sample, analyses, or other information, that Defendants have failed to comply with any

provision of this Decree, have violated the Act or its implementing regulations, or that additional

corrective actions are necessary to achieve compliance with this Decree, the Act or its implementing

regulations, FDA may, as and when it deems necessary, notify Defendants in writing and order

Defendants to take appropriate action, including, but not limited to, ordering Defendants to

immediately take one or more of the following actions:

A.     Cease receiving, preparing, processing, packing, holding, and distributing any articles

of food;

B.     Recall all articles of food that have been distributed and/or are under the custody and

control of Defendants' agents, distributors, customers, or consumers;

C.     Submit samples of articles of food to a qualified laboratory to determine whether they

are contaminated with chemicals, toxins, microorganisms, or filth; and/or

D.     Take any other corrective actions as FDA deems necessary to bring Defendants into

compliance with this Decree, the Act, and its implementing regulations.

The provisions of this paragraph shall be separate and apart from, and in addition to, all other remedies available to FDA. Defendants shall pay all costs of recalls and other corrective actions, including the costs of FDA's supervision, inspections, investigations, analyses, examinations, review, travel, and subsistence expenses to implement and monitor recalls and other actions, at the rates specified in paragraph 15 of this Decree.

17.     Upon receipt of any order issued by FDA pursuant to paragraph 16, Defendants shall immediately and fully comply with the terms of the order. Any cessation of operations or other action as described in paragraph 16 shall be implemented immediately upon notice from FDA and shall continue until Defendants receive written notification from FDA that Defendants appear to be in compliance with the Decree, the Act, and its implementing regulations. After a cessation of operations, and while determining whether Defendants are in compliance with this Decree, the Act, and its implementing regulations, FDA may require Defendants to re-institute or re-implement any of the requirements of this Decree.

18.     Defendants shall maintain copies of their HACCP plans, along with copies of all records required by the plans and by 21 C.F.R. Part 123, at their facility in a location where they are readily available for reference and inspection by FDA officials. All records required to be kept by the HACCP plans and by the regulations shall be retained for at least three (3) years after the date the records are prepared.

19.     If any defendant fails to comply with the provisions of the Act, its implementing regulations, and/or this Decree, then Defendants shall pay to the United States of America liquidated damages in the sum of two thousand five hundred dollars ($2,500) for each day that Defendants fail to comply with this Decree; an additional sum of five hundred dollars ($500) in liquidated damages

per day for each violation of the Act, its implementing regulations, and/or this Decree; and an additional sum equal to twice the retail value of each shipment of adulterated food. Defendants understand and agree that the liquidated damages specified in this paragraph are not punitive in nature and their imposition does not in any way limit the ability of the United States to seek, and the court to impose, additional civil or criminal penalties based on the conduct that may also be the basis for payment of the liquidated damages.

20.     If any defendant violates this Decree and is found in contempt thereof, Defendants shall, in addition to other remedies, reimburse plaintiff for its attorneys' fees, travel expenses incurred by attorneys and witnesses, expert witness fees, administrative and court costs, investigation and analytical expenses incurred in bringing the contempt action, and any other costs or fees related to the contempt proceedings.

21.     All decisions specified in this Decree shall be vested in the discretion of FDA. FDA's decisions shall be final and shall be reviewed by the court under the arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A). Review by the court of any FDA decision rendered pursuant to this Decree shall be based exclusively on the written record before the FDA at the time the decision was made. No discovery shall be taken by either party.

22.     Within ten (10) calendar days after entry of this Decree, Defendants shall provide a copy of this Decree to each and all of their officers, agents, employees, representatives, successors, assigns, heirs, attorneys, and any and all entities or persons in active concert or participation with any of them (in English and Spanish). Defendants shall provide to FDA within thirty (30) calendar days of the date of the entry of this Decree, an affidavit of compliance with this paragraph stating the fact and manner of compliance and identifying the names and positions of all persons so notified.

23.     Defendants shall prominently post a copy of this Decree (in English and Spanish) in an employee common area at Defendants' facility within ten (10) calendar days of the entry of this Decree and shall ensure that the Decree remains posted for a period of at least six (6) months.

24.     Defendants shall, within ten (10) calendar days of the entry of this Decree, hold a general meeting or a series of smaller meetings for employees of the facility, at which they shall describe the terms and obligations of this Decree (in English and Spanish, as necessary).

25.     In the event that any defendant becomes associated with any additional officers, agents, employees, representatives, successors, assigns, heirs, attorneys, or any additional entities or persons in active concert or participation with any of them at any time after entry of this Decree, Defendants shall immediately provide a copy of this Decree, by personal service or certified mail (restricted delivery, return receipt requested), to such persons. Within ten (10) calendar days of each instance that any defendant becomes associated with any such individual persons, Defendants shall provide to FDA an affidavit stating the fact and manner of Defendants' compliance with this paragraph, identifying the names, addresses, and positions of all persons who received a copy of this Decree pursuant to this paragraph, and attaching a copy of the executed certified mail return receipts. Within ten (10) calendar days of receiving a request from FDA for any information or documentation that FDA deems necessary to evaluate Defendants' compliance with this paragraph, Defendants shall provide such information or documentation to FDA.

26.     Defendants shall address all communications required under this Decree to the Director, Chicago District Office, United States Food and Drug Administration, 550 West Jackson Blvd., 15th Floor, Chicago, Illinois 60661, and shall reference this civil action by case name and civil action number in such communications.     Defendants also shall send copies of all such

21

communications to the United States Attorney for the Northern District of Illinois, attention to Donald R. Lorenzen, 219 S. Dearborn Street, 5th Floor, Chicago, Illinois, 60604.

27.     This court retains jurisdiction of this action and the parties hereto for the purpose of enforcing and modifying this Decree and for the purpose of granting such additional relief as may be necessary and appropriate.

SO ORDERED:

Dated this _22nd_ day of December, 2011.

_Wm. J. Hibbler_
UNITED STATES DISTRICT JUDGE

We hereby consent to the entry of the foregoing Decree.

Respectfully submitted by Defendants:

Dated: December _21_, 2011

THOMAS J. WHENNEN, individually and
on behalf of Triple A Services, Inc. as its
Chief Executive Officer

Dated: December _21_, 2011

SCOTT C. WHENNEN, individually and
on behalf of Triple A Services, Inc. as its
President

Dated: December _21_, 2011

DAVID A. FRISCO, individually and
on behalf of Triple A Services, Inc. as its
Chief Operating Officer

22

communications to the United States Attorney for the Northern District of Illinois, attention to Donald

R. Lorenzen, 219 S. Dearborn Street, 5th Floor, Chicago, Illinois, 60604.

27.    This court retains jurisdiction of this action and the parties hereto for the purpose of

enforcing and modifying this Decree and for the purpose of granting such additional relief as may be

necessary and appropriate.

SO ORDERED:

Dated this _22nd_ day of December, 2011.

_____
UNITED STATES DISTRICT JUDGE

We hereby consent to the entry of the foregoing Decree.

Respectfully submitted by Defendants:


Dated: December ___, 2011

_____
THOMAS J. WHENNEN, individually and
on behalf of Triple A Services, Inc. as its
Chief Executive Officer


Dated: December ___, 2011

_____
SCOTT C. WHENNEN, individually and
on behalf of Triple A Services, Inc. as its
President


Dated: December _21_, 2011

_____
DAVID A. FRISCO, individually and
on behalf of Triple A Services, Inc. as its
Chief Operating Officer


22

Dated: December 21, 2011

RICHARD KESSLER, as counsel for
Defendants Triple A Services, Inc.,
Thomas J. Whennen,
Scott C. Whennen, and
David A. Frisco

Respectfully submitted by the UNITED STATES OF AMERICA

PATRICK J. FITZGERALD
United States Attorney

Dated: December 22, 2011

By: _Donald R. Lorenzen_
DONALD R. LORENZEN
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5330
donald.lorenzen@usdoj.gov

Dated: December 22, 2011

_Carol Lynn Wallack by D. Lorenzen_
CAROL LYNN WALLACK
Trial Attorney
Consumer Protection Branch
Civil Division
United States Department of Justice
P.O. Box 386
Washington, D.C. 20044

Of Counsel:

WILLIAM B. SCHULTZ
Acting General Counsel

ELIZABETH H. DICKINSON
Acting Associate General Counsel
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

JILLIAN R. WEIN
Assistant Chief Counsel for Enforcement
U.S. Department of Health and Human Services
Office of the General Counsel
Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, Maryland 20993-0002